## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

SKYLER HOWER,                                )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )        No. 4:25-CV-00227 HEA
                                             )
C.O. UNKNOWN RICE, et al.,                   )
                                             )
                    Defendants.              )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Skyler Hower, an inmate at Potosi Correctional Center (PCC), for leave to commence this action without payment of the required filing fee. [ECF No. 2]. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $41.81. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff's motion for counsel will be denied as moot. [ECF No. 4]. His motion for preliminary injunction will be denied without prejudice. [ECF No. 7].

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly balance of $73.09 and an average monthly deposit of $209.08. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $41.81, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating the court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a self-represented complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff Skyler Hower, an inmate at PCC, brings this prisoner civil rights claim under 42 U.S.C. § 1983 against seventeen (17) defendants: (1) C.O. Unknown Rice; (2) C.O. Unknown Barton; (3) C.O. Unknown Green; (4) C.O. Unknown Delay; (5) C.O. Unknown Dean; (5) C.O. Unknown Deen; (6) C.O. Unknown Thomas; (7) C.O. Unknown Conway; (8) C.O. Unknown Price; (9) C.O. Unknown Brown; (10) Nurse Cynthia Butterworth; (11) C.O. Unknown Mezo; (12) C.O. Unknown Odle; (13) Anne Precythe; (14) Warden Unknown Vandergriff; (15) Assistant Warden Jennifer Curry; (16) Deputy Warden Jody Galare;[1] (17) Deputy Warden Unknown Frances. Plaintiff sues defendants in their individual and official capacities.

---

[1] The Clerk has identified this defendant on the docket as Unknown Jody. In the complaint, defendant is identified as Deputy Warden Jody Galare. The Court will instruct the Clerk to update the docket with defendant's proper name: Jody Galare.

Plaintiff alleges that on or about May 8, 2023, while incarcerated at PCC, he was placed on a protective custody bench in Housing Unit 2 – A-Wing. Another inmate, who plaintiff does not name,[2] was placed next to him on the bench. In all, plaintiff states that he and the other inmate sat on the same bench for approximately two hours. Plaintiff claims that the inmate next to him spent time "slipping his handcuffs" from his wrists and attempting to slip the shackle from his foot. However, plaintiff does not explain how the inmate was "slipping his handcuffs," or if the handcuffs were coming off his wrists completely. Rather, plaintiff claims, in a conclusory fashion, that all "floor officers" in Housing Unit 2 – A-Wing, including defendants Rice, Barton, Green, Dean and Thomas, knew the inmate was doing this.

At lunch time, both plaintiff and the second inmate shackled to the bench were given lunch trays. At one point in the complaint, plaintiff states that he was shackled to the bench by one foot, and he had his hands cuffed behind his back. Plaintiff does not indicate how he was shackled during lunch. However, when he was given his lunch tray, it is logical that plaintiff had his hands in front of him to eat. Thus, the Court is unable to ascertain how both he and the inmate next to him were handcuffed and shackled during all moments they were held on the bench.

As soon as officers left the area, plaintiff claims that the inmate next to him threw his lunch tray lid at him, which plaintiff deflected with his foot that was not shackled. The inmate then threw his tray of food at plaintiff. Although the tray missed plaintiff, food splattered on him and went past him. Plaintiff claims that multiple officers in the "bubble" and Housing Unit 2 Control Room laughed. Plaintiff states that multiple "floor officers," presumably defendants Rice, Barton, Green, Dean and Thomas, commented on the food splatter on him and asked why he was doing this to

---

[2]In a supplement to the complaint, *see* ECF No. 5, plaintiff identifies another inmate by the term "Gomez." It is unclear if this is the inmate he shared the bench with on May 8, 2023.

himself. Plaintiff additionally complains that specifically, Officer Delay made fun of him for having food splatter on him.

Nurse Cynthia Butterworth came to do "restraint checks" on the handcuffs and shackles after this time. Plaintiff claims that Nurse Butterworth told an unnamed Correctional Officer that the other inmate's cuffs were fine but to loosen the shackle on the inmate's ankle, which plaintiff asserts was "the only thing keeping him from getting off the bench." Plaintiff believes, however, that the inmate's handcuffs were too loose, and he insists that the handcuffs needed to be tightened. Plaintiff, however, has not indicated how he purportedly knew this fact, and if he was close enough to the other inmate to actually see how tight his handcuffs were on his wrists.

Correctional Officer Unknown Delay then came to remove plaintiff from the bench and take him to a cell. However, an unnamed Correctional Officer in the "bubble" told Delay to "leave him and get the other one," so plaintiff was placed back on the bench again. Plaintiff does not indicate who placed him back on the bench. Correctional Officer Rice then came to take the inmate next to plaintiff to a cell. Plaintiff claims that as the inmate was rising from the bench, he grabbed something from the back of his pants which was later identified as a knife. Rice asked the inmate, "What are you doing," and then allegedly let go of the inmate. Plaintiff does not state how or why Officer Rice let go of the inmate, i.e., whether it was by accident or if it was done on purpose. Plaintiff states that the inmate then slipped his cuffs, ran at him, repeatedly stabbed him in the head, face and neck and caused a need for emergency medical care. Plaintiff fails to state how Officer Rice reacted to the altercation or if Rice acted to get the inmate away from plaintiff.

Plaintiff alleges that Officer Rice failed to protect him from harm and showed deliberate indifference to his health and safety by failing to intervene in the attack after it had already occurred. He asserts that Officer Barton, a "bubble officer," failed to protect him by failing to actively watch the cameras and through the control windows to protect him from the other inmate.

However, plaintiff fails to articulate at what point Barton could have seen something from his attacker which would have provided a warning to Officer Barton of the deliberate danger he was in.

Plaintiff further alleges that Officers Green, Delay, Dean and Thomas failed to adequately protect him from the assault from the other inmate because they allegedly have a duty to protect everyone at PCC. Plaintiff additionally alleges that Nurse Butterworth ignored the loose handcuffs on the inmate who attacked him and loosened the shackle around his ankle, which was both a failure to protect him and deliberate indifference to his health and safety. Plaintiff asserts that Butterworth's failure to do proper restraint checks on his attacker caused his injuries.

Plaintiff makes conclusory claims against the remaining supervisory defendants in this action: Conway, Price, Brown, Mezo, Odle, Precythe, Vandergriff, Curry, Galare and Frances. He asserts generally that the failure of the supervisory defendants to do their jobs resulted in him being stabbed repeatedly while he was handcuffed and shackled to a bench at PCC on May 8, 2023. For example, Officer Conway was the supervisor of Housing Unit 2, and plaintiff alleges that there would have been a different outcome if "he was supervising not just the inmates but C.O.'s of H.U.2. Him not doing his job resulted in officers knowingly [not] seeing the danger I was in and let[ting] it happen."

Plaintiff additionally asserts that Facility Supervisors Price, Brown, Mezo and Odle were negligent for failing to watch the security feed on May 8, 2023, to see the inmate who was shackled to the bench with him, throw the lunch tray, "slip his handcuffs for hours," and stab him.

Plaintiff claims that former Director of the Missouri Department of Corrections (MDOC) Anne Precythe, as well as supervisory defendants at PCC including Warden Vandergriff, Assistant Warden Curry, Deputy Warden Galare and Deputy Warden Frances, should be held liable for acting with deliberate indifference on May 8, 2023, because each of them had a duty and

responsibility for day to day operations and to maintain a safe and secure environment at PCC and within MDOC.

Plaintiff states that he is seeking damages and injunctive relief[3] for alleged violations of his rights.

## Discussion

Based on a careful review and liberal construction of the filings before the Court, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A. Official Capacity Claims

A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); and *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official . . . capacities sues only the public employer"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.,* 147 F.3d 741, 744 (8th Cir. 1998).

---

[3]Plaintiff seeks to have each of the defendants fired from employment at MDOC, and he asks that they not be allowed contact with inmates at MDOC. The Court does not construe such claims as asking for prospective injunctive relief.

Here, plaintiff alleges that defendants are employees at Potosi Correctional Center (PCC) in Mineral Point, Missouri. Potosi Correctional Center is part of the Missouri Department of Corrections, which is a state agency of the State of Missouri. As noted above, plaintiff's official capacity claims against defendants are really claims against defendants' employer – the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity. They are therefore subject to dismissal.

### B. Individual Capacity Claims

#### 1. Lack of Personal Involvement

Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). As such, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (internal citations omitted); *see also Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). To succeed, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

Furthermore, to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.,* 647 F.3d 841, 849 (8th Cir. 2011).

Plaintiff has listed supervisory defendants Conway, Price, Brown, Mezo, Odle, Precythe, Vandergriff, Curry, Galare or Frances in the complaint, but he has failed to make allegations that these defendants engaged in conduct that deprived him of a federally-protected right, *i.e.,* that the supervising official, through his or her own individual actions, violated the Constitution or that the supervising official failed to properly train each individual who engaged in the improper conduct. Supervisors, such as these defendants, cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal*, 556 U.S. at 676. To state a claim, plaintiff must plead that the supervising official, through his or her own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the complaint must allege adequately that each supervisory defendant acted with an impermissible purpose, not merely that he or she knew of a subordinate's motive. *Id.* The Court therefore concludes that the complaint fails to state a claim upon which relief may be granted against defendants Unknown Conway, Unknown Price, Unknown Brown, Unknown Mezo, Unknown Odle, Anne Precythe, Unknown Vandergriff, Jennifer Curry, Jody Galare or Unknown Frances.

### 2. Failure to Protect

Plaintiff makes the generalized allegation that defendants Green, Delay, Dean and Thomas (floor officers and an escort officer) failed to adequately protect him from the assault from the unnamed inmate because these officers purportedly have a duty to protect everyone at PCC.[4] He

---

[4]Plaintiff also makes conclusory failure to protect claims against several supervisory defendants in this action, including the following: Conway, Price, Brown, Mezo, Odle, Precythe, Vandergriff, Curry, Galare and Frances. He asserts generally that the failure of the supervisory defendants to do their jobs resulted in him being stabbed repeatedly while he was handcuffed and shackled to a bench at PCC on May 8, 2023.

asserts that that Officer Barton, a "bubble officer," failed to protect him by failing to actively watch the cameras and through the control windows to protect him from the other inmate. He additionally asserts that Officer Rice, who was escorting the unnamed inmate also failed to protect him from harm because when Rice allowed the inmate to get up from the bench, the inmate "slipped his cuffs," grabbed a knife from the back of his pants, and Rice asked the inmate, "What are you doing." Plaintiff last alleges that Nurse Butterworth ignored the loose handcuffs on the inmate who attacked him and loosened the shackle around his ankle.

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004). However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove an Eighth Amendment violation, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective inquiry and requires that the prisoner prove that the prison official had a "sufficiently culpable state of mind."

---

The Court previously found that plaintiff was unable to state a claim against the supervisory defendants and dismissed the claims against them.

*Id.* "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007).

Regarding the first element, plaintiff must show that he was at a substantial risk of serious harm. *See Berry*, 365 F.3d at 634. Typically, a failure to protect case arises out of an inmate-on-inmate assault that involves an attacker known to be dangerous and volatile. *See Vandevender v. Sass,* 970 F.3d 972, 976 (8th Cir. 2020). *See also Young*, 508 F.3d at 873 (explaining that inmate who assaulted plaintiff posed a substantial risk of serious harm because the inmate was "particularly volatile…was easily offended and enraged, and that he was willing to attack…when in a state of rage"); *Newman v. Holmes*, 122 F.3d 650, 651-52 (8th Cir. 1997) (explaining that inmate who assaulted plaintiff posed a substantial risk of serious harm because he was on disciplinary court review status, meaning the inmate was a potential danger to others and was supposed to be in isolated confinement); and *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (assuming without deciding that inmate who assaulted plaintiff posed a substantial risk when prison officials knew that plaintiff had a relationship with the inmate's wife, and the inmate threatened plaintiff).

In determining whether a substantial risk of serious harm exists, the Court looks at certain factors such as (1) whether plaintiff had been threatened by the assaulting inmate; (2) whether the assaulting inmate was known to be violent or volatile; (3) whether plaintiff and the assaulting inmate had previously argued or fought, been cellmates, or even knew each other; and (4) whether either plaintiff or the assaulting inmate had recently been in protective custody or in a restrictive status such as administrative segregation. *See Vandevender*, 970 F.3d at 976.

- 11 -

The second requirement of a failure to protect claim is that the defendant acted or failed to act with deliberate indifference to the plaintiff's safety. *Farmer*, 511 U.S. at 837. Negligence is insufficient to demonstrate deliberate indifference. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Rather, for a defendant to have acted with deliberate indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). That is, a plaintiff must demonstrate that the defendant "actually intended to deprive him of some right," or that the defendant "acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984).

The Court will first address plaintiff's generalized allegations that Officers Green, Delay, Dean and Thomas (floor officers and an escort officer) failed to adequately protect him from the assault from the unnamed inmate because these officers purportedly have a duty to protect everyone at PCC. These allegations are too conclusory and do not properly allege that these defendants had either a subjective or objective knowledge that the inmate who shared a bench with plaintiff on May 8, 2023, was threatening toward plaintiff, known to be violent or had previously fought or argued with plaintiff. Although these defendants may have known that the inmate on the bench threw his lunch tray at plaintiff, such an act cannot have been new in the prison environment at PCC. Plaintiff has not alleged, however, that these defendants acted with deliberate indifference or with reckless disregard to a known risk to plaintiff's safety. Accordingly, plaintiff's failure to protect claim against defendants Green, Delay, Dean and Thomas are subject to dismissal.

Similarly, plaintiff's failure to protect claim against defendant Barton is also subject to dismissal. Plaintiff has failed to allege that Officer Barton, the "bubble officer" failed to protect him by failing to *actively* watch the cameras and watch through the control windows to protect him from the other inmate on the bench with him. As plaintiff explains the attack against him, it

occurred in a split second when Officer Rice was attempting to take the inmate from the bench and escort him to another location. Plaintiff fails to articulate how Officer Barton could have seen or done something to allegedly prevent the attack that occurred in a split second. Plaintiff has not alleged that anyone knew that the other inmate had a knife and failed to take the knife from him prior to the alleged attack. Moreover, as noted above, plaintiff has not articulated that he had been previously threatened by the other inmate, or assaulted, or that he even knew him. And plaintiff does not allege any facts showing that Officer Barton acted with deliberate indifference or with reckless disregard to a known risk to plaintiff's safety. As such, the Court will dismiss plaintiff's failure to protect claim against Officer Barton.

Although the claims against Officer Rice and Nurse Butterworth are a closer call, the Court finds that under the standards as set forth above, plaintiff is unable to state a failure to protect claim. Plaintiff asserts that Officer Rice, who was escorting the unnamed inmate from the bench in Protective Custody, failed to protect him from harm because when defendant Rice allowed the inmate to get up from the bench, the inmate "slipped his cuffs," grabbed a knife from the back of his pants, and Rice asked the inmate, "What are you doing." Plaintiff alleges that Rice "let go of the inmate" at that time, allowing the inmate to lunge at plaintiff. But as noted above, plaintiff fails to allege the circumstances behind how Rice let go of the other inmate, *i.e.,* whether it was an accident or something deliberate. Moreover, plaintiff has not alleged what Rice did after the altercation began to separate the two inmates and protect plaintiff from further damage from the other inmate.

Plaintiff asserts that Nurse Butterworth ignored the loose handcuffs on the inmate and loosened the shackle around his ankle. However, plaintiff acknowledges that Nurse Butterworth also reported that the inmate's handcuffs were fine as they were and did not need to be loosened or tightened, and that this occurred prior to Officer Rice attempting to move him from the bench.

Plaintiff does not allege that he had a history of conflict with the other inmate. Plaintiff does not allege that prior to the day on the bench with the other inmate, the other inmate had behaved in an aggressive or threatening manner towards him. Moreover, he fails to provide any allegations that would permit the inference that defendants Rice and Butterworth were aware of facts from which they could infer the other inmate on the bench posed a substantial risk of serious harm. Furthermore, plaintiff fails to allege that Rice had *actual knowledge* that the inmate was able to slip his cuffs at the time Rice was attempting to remove him from the bench or that the inmate had a knife hidden in his pants. Plaintiff has not alleged that Nurse Butterworth's loosening of the inmate's leg shackle led to the attack. Last, plaintiff has not alleged facts that would lead the Court to believe that these defendants acted with deliberate indifference or with reckless disregard to a known risk to plaintiff's safety. Plaintiff has therefore failed to state a viable failure to protect claim against defendants Rice and Butterworth.

While plaintiff is not required to allege and prove defendants specifically knew about or anticipated the precise source of harm, he is required to allege more than a general risk of violence that is inherent in prison life. *See Curry v. Crist*, 226 F.3d 974, 978 (8th Cir. 2000) (prison officials "are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence"); *see also Baker v. Pettis County Jail*, 2007 WL 4289693, *7 (W.D. Mo. Nov. 28, 2007) (the reality is that inmates do not always get along; therefore, inmate's generalized statements that he was not getting along with other inmates and had been harassed and threatened were insufficient to establish the defendant official had sufficient knowledge of a substantial risk of serious harm). Plaintiff's allegations establish, at most, that Officer Rice should have, but did not, perceive a significant risk. However, such allegations do not rise to the level of deliberate indifference, as necessary to state a viable failure to protect claim. *See Farmer,* 511 U.S. at 838; *see also Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (explaining, in a failure to

protect case, that "deliberate indifference includes something more than negligence ... it requires proof of a reckless disregard of the known risk."). Having thoroughly reviewed and liberally construed the allegations in the amended complaint, the Court concludes plaintiff has failed to state a failure to protect claim against defendants. The Court will therefore dismiss defendants Green, Delay, Dean, Thomas, Barton, Rice and Butterworth from this action.

### 3. Failure to Intervene

Plaintiff alleges that Officer Rice failed to intervene in the attack by the unnamed inmate. However, as noted above, he fails to indicate what steps Rice took after the inmate started the attack, i.e., if Rice acted to pull the other inmate apart from plaintiff. In a supplement to his complaint, he asserts in a conclusory fashion that he was *told by another Officer after the attack*, defendant Conway, that he allegedly saw Officer Rice loosen the cuffs of the inmate before removing him from the bench.[5] [ECF No. 5]. As noted below, this information is hearsay and must be disregarded.

The Eighth Amendment imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). As such, under 42 U.S.C. § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer…was using excessive force and otherwise was unlawfully punishing the prisoner"); and *Buckner*, 983 F.2d at 121-22 (determining that state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer). "A prison official acts with deliberate indifference to an

---

[5]To the extent plaintiff attempts to make his supplement to his complaint appear as though this is an affidavit from defendant Conway, the Court reminds plaintiff that he can be sanctioned for attempting to put forth false evidence before the Court. It is apparent that defendant Conway did not sign the document, thus, it is not an affidavit. Rather, plaintiff is attempting to put forth hearsay, or what he was told by defendant Conway, outside of Court.

inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994). Plaintiff has not properly alleged a failure to intervene by Officer Rice in his complaint. He has failed to allege that Rice failed to react to restore control after the inmate attacked him. Accordingly, his claim for failure to intervene is subject to dismissal.

### 4.   Verbal Comments from Defendants

Plaintiff asserts that several defendants laughed and jeered at him about the food splatter on his clothing. Unfortunately, the Constitution does not guard against all intrusions on one's peace of mind. *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). In other words, fear or emotional injury resulting "solely from verbal harassment [] is generally not sufficient to constitute an invasion of an identified liberty interest." *Id.* at 1067 (citations omitted); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983") and *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758-59 (8th Cir. 2001) (stating that "any alleged verbal harassment, in the form of threats and unflattering remarks directed at plaintiffs, does not rise to the level required to establish a constitutional violation"). Accordingly, to the extent plaintiff wishes to hold defendants liable for harassment or name calling, his claims are subject to dismissal.

### Motion for Preliminary Injunction

Plaintiff filed the instant action on February 25, 2025. [ECF No. 1]. However, on May 12, 2025, he filed a motion for preliminary injunction and memorandum in support in this case. [ECF Nos. 7 and 8]. In his motion for preliminary injunction and accompanying memorandum plaintiff asserts that a Major Davis, an individual who is not a named defendant in this action, was present at a cell search on April 4, 2025, at PCC, and he made "unprofessional comments" toward plaintiff on that date. Plaintiff states that he was attempting to tell the officers doing the

search that he owned the fan, but Davis walked up and stated, "Shut up, turn around and face the wall or you are going to Ad-Seg. Fuck with us, we fuck with you." Plaintiff's fan was then confiscated. He believes that confiscation of the fan by Major Davis was retaliatory, although he fails to state what it was done in retaliation for. Plaintiff states that when he went to the property room to get his new fan, defendant Mezo told him he needed to have a removal slip for his old fan to get a new one. Plaintiff was able to produce the removal slip after going to his cell to get it, and presumably he was able to get the new fan from defendant Mezo in the property room.

Plaintiff additionally claims that the Clerk of Court mailed him a copy of the docket sheet on April 17, 2025. However, the PCC "litigation office" failed to forward it to plaintiff. Plaintiff believes this is a violation of his access to courts, and he blames his Case Manager, Ms. Summers, who is also not a named defendant in this action.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and

intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id.* at 521. Furthermore, the "danger must be more than a mere possibility." *Id.* Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id.* Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.,* 920 F.3d 1181, 1183 (8th Cir. 2019).

Plaintiff's motion for preliminary injunctive relief fails because the substance of the motion is not related to the claims in his complaint. As such, the Court cannot grant the motion. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); and *Hale v. Wood*, 89 F.3d 840, 1996 WL 341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive relief because he "failed to establish a connection between these injuries and the conduct he challenged in his complaint"). Plaintiff's allegations relating to the cell search and alleged retaliation from Officer Davis do not relate to his failure to protect claims against the named defendants. Although he attempts to make the claim appear as a retaliation claim, he fails to allege facts that show a causal connection to the filing of his lawsuit against the named defendants and Officer Davis' comment or seizure of his fan. Additionally, he admits that although his first fan was confiscated, Officer Mezo, who is a named defendant in this action, provided him with a new fan once he provided her with the proper paperwork.

Similarly, Case Manager Summers is also not a named defendant in this action, and plaintiff has not alleged that her inability to provide him with a copy of the Court's docket sheet

in a timely manner was somehow connected to the present lawsuit. Moreover, mail to and from the Court is not "legal" mail. *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). This is because, "with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." *Martin v. Brewer,* 830 F.2d 76, 78 (7th Cir. 1987). Last, to the extent plaintiff failed to get a copy of the docket sheet in this matter, he could have simply asked for a new copy.

After carefully reading and liberally construing the complaint, the Court concludes that it must be dismissed because it fails to state a claim upon which relief may be granted. Plaintiff is clear about the claims he wishes to bring, and it is apparent that the problems with the complaint would not be cured by permitting plaintiff to file an amended pleading. Plaintiff's complaint will therefore be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket to reflect Warden Jody Galare's proper name.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $41.81 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction [ECF No. 7] is **DENIED without prejudice.**

- 19 -

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel [ECF No. 4] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 11th day of August, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE